The first case on today's docket is cause number 21-10626, Chandler v. Phoenix Services. For the appellant, Mr. Baroudi, did I pronounce that correctly? Congratulations to me. And then for the, but it's going to get worse fast. For the appellee, is that Mr. Pat Manoban? Pat, I'm close. Take the congratulations back. All right, you ready to proceed, Mr. Baroudi? I'm Ted Baroudi, and I represent Mr. Chandler, Chandler Manufacturing, Supertherm, and Nuco Enterprises. May it please the court. To address the Zitronix 2 question, let me begin with how the prior panel in Zitronix framed the issue. They said that the Federal Circuit's equivalent dilemma was deciding what to do with causes of action not created by Federal patent law that nevertheless implicate it. That is exactly what we have here. This is another, what's been referred to as a stand-alone Walker process fraud patent case. So it's an antitrust case, but the only basis of liability is patent fraud. And that was the exact situation in Zitronix. And so the prior panel was very interested in the Supreme Court cases of Gunn v. Mitton and Christensen. And so Gunn v. Mitton was newer, and the Federal Circuit considered that it impacted the jurisdictional analysis, and your prior panel was very, disagreed with that, and I disagree with that. When you say, I agree, you're right, that the prior panel disagreed with that. Did it find it implausible to think that Gunn impacted the Federal Circuit's appellate jurisdiction? And you know why I'm asking that, because as a transferee court, I think all we're supposed to do is say, is it plausible or not? And I struggle with whether our prior panel said, well, Gunn doesn't apply, so that's I mean, I know that seems like a very abstract distinction, but I guess that's what the Supreme Court has told us. The prior panel said exactly that and did it with humility, and I can quote it, that the court transferred this case to us, but we find it implausible that we are the proper court to decide the appeal. So all of it's implausible. You think all of it? All of it. All of it. And I can give you an explanation, too. When you say all of it, you're talking about this case. Both. Both. The prior panel and this case. This case is also implausible because it also has substantial issues of federal patent law that will have to be decided pursuant to Federal Circuit case law. But let me get there. But you agree that all we have, well, I say all we have to do, that if we find it plausible, then we have jurisdiction. Yes, Your Honor. All right. And as a preview, that will key on if there are not substantial issues of federal patent law that need to be decided in this case, then it certainly will be plausible. But the prior panel in analyzing a standalone Walker Process patent fraud case basically said that's not possible. Is it your position that you just said that if this is an antitrust case under the Clayton Act, it still has patent law in it? Yes, sir. And let me, yes, Your Honor. And let me tell you what those issues are. First of all, experimental use is going to be a very important issue in this case. Experimental use is a defense to what's called the on-sale bar or public use bar to getting a patent that was at the time under 35 U.S.C. 102 A and B. That's something that the Federal Circuit clerks and judges, I estimate, deal with every day. Rarely would you ever see that here. And the reason that's important is because before we could have an antitrust case, we had to have inequitable conduct. Inequitable conduct is a second substantial issue of federal patent law that would also have to be decided in this case because statute of limitations is at issue. We waited 46 days plus four years before we filed this antitrust case. The North Dakota litigation, which is the energy heating case, which found that the 993 patent was obtained by fraud and asserted fraudulently in North Dakota. It was asserted fraudulently in the Northern District of Texas against us, and it was asserted fraudulently again in the Northern District of Texas against a third group of competitors called NSERVCO that got transferred to Colorado and has since settled. So they had three goes at this, and the Federal Circuit in the energy heating litigation already found that the lawsuit based on the 993 patent that was fraudulently obtained was filed, the filing of it was objectively and subjectively baseless, and it was filed in bad faith, and it was affirmed $5.3 million against the other side in exceptional case attorneys' fees. And to continue that part of the analysis, the other side's basically walking on that. They didn't file a supersedious bond, and about the only thing that's happened to pay that is executing on some of the Chandler heater trucks that we sold energy heating up in North Dakota, and that's why in this case we need the single business enterprise theory for liability to get to Phoenix Services because they're not paying. They have gotten away to date with damaging competition. They've done a lot of damage. They ran Supertherm out of business. Chandler Manufacturing is a shadow of what it was. Mr. Chandler is 81 years old now, but he still wants to fight. He wanted to give Chandler Manufacturing and Supertherm that were doing very well when this started before they sued them to his family as part of his legacy. And... I'm going to ask you about... Okay. The 993 patent has already been declared unenforced. Exactly. Yes, Your Honor. So what patent law issue are we required to decide in order to rule on this case? Okay, there's three, and they're actually pretty complicated. The first one is the experimental use that I just described, and the second is inequitable conduct, and the third is going to be how Phoenix Services at the top of three layers of LLC can be held liable for fraudulent patent litigation in the Northern District of Texas. So going first to the experimental use, to adjudicate... Are you saying abuse? Experimental use. All right. So to adjudicate the statute of limitations issue, before I could have an antitrust case, I had to have inequitable conduct. Before I had facts to support inequitable conduct, there had to be deceptive intent by the patent lawyer filing it with the patent office for the 993 patent or the client. But federal circuit law says that that deceptive intent has to be the single most reasonable inference. That is a very high bar. If the lawyers, the patent lawyers, were just stupid, were just negligent, that's not enough. If they were grossly negligent, that's not enough. They had to have not disclosed the 61 prior frack jobs with deceptive intent, and there's no reason... It's also a fact issue for trial. It should not have been decided by the judge. So I hear what you're saying about that, about the experimental use. I had thought, and maybe I'm wrong, that's why we have oral argument. I thought that that issue was off the table because the 993 patent had already been declared invalid or unenforceable, and so therefore the uses that occurred before the critical date of the year were not experimental. So I thought that issue was off the table, but you're saying it's not. It's not because they're going to use that to tag us with statute of limitations for being 56 days, allegedly 56 days. You're saying it's going to come into the statute of limitations issue somehow. No question at all. And it's going to get even more complicated because their inequitable conduct defense blew up on them at trial. They... Let me take one step back. We had a very reasonable belief, again, a fact issue for trial, that this was an experimental program because we were there in 2008. They were using our trucks. These were the biggest, baddest, frack water heating trucks on the planet at the time we built them, and we were very proud of them. And it is in the record at ROA 2571 that Mr. Chandler attended one of these experiments in 2008. So with all the variables they're testing, you can have 61 experiments. If they had maintained this experimental program, we had a reasonable belief there wasn't inequitable conduct and we didn't have an antitrust case, at least not four years and 56 days before we filed the lawsuit. We really didn't know we had an antitrust case until... We really didn't know we had an antitrust case until the federal court in North Dakota, Judge Erickson, who's now on the 11th Circuit, in equity in January 2016, found inequitable conduct. And it's important to understand why he found inequitable conduct and why that wasn't our base case, our reasonable understanding of the facts. We saw back in late 2015 and late 2014 precisely because they had declaration. They had a patent prosecutor who was going to testify that he gave legal advice saying these were all experiments. When it came time for depositions, and the other side asked about that, Heat on the Fly and Super Heaters objected to attorney-client privilege. Then it came time to trial, and they wanted to assert the inequitable conduct defense. And Judge Erickson said no. So on those facts, without a defense by the patent prosecutors, he found inequitable conduct. Then we had an antitrust case. So there is a lot of patent law that needs to be discussed and ruled on. And I'll note in Noble Forma, these are issues of federal circuit law. So to that point, I guess the elephant in the room is, as I read the transfer order in this case from the federal circuit, I guess before in Extronix or however you pronounce that, they said, all right, we didn't think we had jurisdiction, but we'll take it back. It's plausible. Here, aren't they saying it's not plausible? So what's going to happen if we agree with you and we say, eh, we have to transfer it back to the federal circuit? I asked Judge Chen that, and he even asked the other side, why do you want to play ping pong? Well, the courts don't want to play ping pong, I guarantee you that. Right. So what's going to happen? Judge Wallach, in oral argument, said, and I'm quoting the best of my memory, if we send this to the federal circuit, I mean, if we send this to the Fifth Circuit, they're only going to send it back. So what's going to happen then? What's going to happen in your view? In the interest of justice, they can keep it to end the ping pong. Seems like they sent a strong signal. Is that distinguishable, Xitronix 2? I do not think Xitronix 2 is distinguishable from this case, and therefore, I do believe you are bound. And the reason, the ultimate reason I would say that is that the prior panel . . . But if we make a plausibility finding, we retain jurisdiction. You agree with that? Absolutely. Absolutely. But the question that was asked that we got through the clerk's office was, are you bound? And I got the cifrous oral argument from the federal circuit that they were bound by Xitronix 1. So I've been here before, and they felt bound by Xitronix 1, so they sent it here. Well, here, the prior panel . . . I mean, and obviously, it's not my call. The fidelity that the courts . . . one panel wants to give another panel . . . is at your discretion. Actually, it's not. I mean, we're bound by the prior panel. It's not at our discretion. Let me tell you, the federal circuit thinks that the distinguishing factors, the one that Judge Graves already asked about, which is the patent allegedly being forced by Phoenix has already been ruled unenforceable. They think that is the distinguishing factor here, and you disagree with that, just to be clear. Yes. Okay. Because I think you are on safe ground and would not do violence to the prior panel by saying you're bound because there's going to be necessary adjudication on your part on how to apply the experimental use exception to 35 U.S.C. 102A, 102B patent statutes to resolve the statute of limitations question, as well as an understanding of what is inequitable conduct and what notice did we have of inequitable conduct, and especially all the federal case law about deceptive intent, all of that is noble forma federal circuit law that you're going to have to consider. So, if you're asking me, are there substantial issues of federal patent law that remain in this case, even though the federal circuit has affirmed in a final non-appealable judgment that the 993 patent was procured by fraud, there's inequitable conduct, all of that, my answer is still yes. It would be more advantageous for me and a quicker result if it were resolved here. We're here. We're happy to be here. But if you're asking me if you're bound, I think I'm bound to say yes. All right. Thank you, counsel. All right. You may proceed. May it please the Court, Your Honors. Before I start with a direct answer to your question, let me just play off of something Mr. Berruti said. So, I think both parties want this court to, this case to be decided by the correct court. But what Mr. Berruti alluded to in the federal circuit argument is federal circuit feels very strongly Zitronic 1 compels transfer to this court. And this court, just reading the tea leaves from the question, but also just from Zitronics 2, feels fairly strongly that this case belongs back in the federal circuit. And, you know, this issue has now come up three times, USPPS, Zitronics, and now here. So, this may be a case where you might want to consider, and I'm saying this respectfully, but you may want to consider certifying this to the Supreme Court and just having them decide this once and for all. But leaving that aside, I can now answer the question that you are. We can do that. We can do that, certify to the Supreme Court? I think you can. I think it's under Rule 19. I mean, I remember reading something about that sometime. Just nobody's briefed that. Oh, yeah, no. We didn't brief that. It was just something that just came up. In other words, you're saying that could be a way of avoiding the jurisdictional ping-pong that might happen if, because I read the Chandler, I read the transfer here from the federal circuit as saying, don't send it back to us. It's not plausible. I mean, when I say I read it that way, that's because I can read English, right? No, and I think they are, and I think the distinction that the federal circuit believes is there is a distinction that's consistent with how Zitronix 2 is written, is that in this case, the patent issues are dead because the very reason all these cases get transferred to the federal circuit when it's a Walker process claim is typically the procedural posture is such that you end up with always having patent issues because the litigants are still fighting over whether there is inequitable conduct, whether there is some bad act that pulls in the body of patent law that you want the federal circuit to decide. Here, it's unique in that all of those issues have already been decided by the very court you want to decide those issues, which is the federal circuit. If you look at the decision on the 993 patent from the federal circuit, you'll see exactly what Your Honors alluded to, which is the experimental use doctrine, for instance, that Mr. Berruti brought up, expressly addressed in that decision. Mr. Berruti says, and he made this argument quite emphatically, that the experimental use issue and various issues surrounding inequitable conduct as well will have to be decided in the course of deciding the statute of limitations issue. The patent issues are, in effect, still there. What is your response to that? Your Honor, the most basic response to that is the question of when a cause of action is accrued is not a question of patent law. That is a question of Fifth Circuit law, Texas law. It's a question that we're going to—and if you look at the briefing on this issue, you'll see that the judge, the district court below, the parties are all citing to Texas law and saying, is there fraudulent concealment, is there not? Those are all issues that are—there is nothing to do with patent law. And the problem that he's alluding to and the problem that's causing all of this is the admission or the concession Chandler made down below where they said you couldn't know whether there was any bad act until after the judge in North Dakota made the decision in January of 2016. But the reason that decision, as the district court even said, is fatal to all of this and why patent law is not even implicated is if the underlying cause of action is somehow leaving aside whether it's Phoenix even, somehow there's a litigation brought where the party bringing the litigation knowingly knew their patent was unenforceable and yet enforced it, which is the antitrust problem. Yet the plaintiff in this case admits no way to know it at that time because the only way you would know it is after January of 2016. The cause of action just can't be brought because that's an admission that says no one knew. No one knew it was bad or good, and that's consistent with what happened down below. That experimental use defense was a heavily litigated defense. Yeah, we lost, but regardless, it wasn't one of those where people walked in and there was a basis for why everybody was saying whether it should be in or should be out. And so when they make that, when Chandler makes that concession, it undercuts the entire reason for this cause of action. And so to go back to your question, when it accrues, how it accrues, none of that implicates patent law. That's a statute of limitations argument based on Fifth Circuit law, based on Texas law, and it's not going to implicate anything. And that's the reason every time we go back to this, the reason it's different from Zitronix 2, the reason it's different from the cases this court has cited in Zitronix 2, whether it's Noble Pharma, whether it's Cipro, whether it's the case after the USPPS case, the Lipitor case, all of those, it's all working off of the same principles, which is every time this court says, hey, hold on, that's a patent law case, the reason this court is saying that is it very carefully delineates and says the patent issue is still alive. In the cases there where you say, well, that's fine, I can see why that went to the Third Circuit or that went to a different circuit, this court is very careful to say, oh, the patent law case, there are no patent issues, it's all antitrust issues. Are you distinguishing this case from Zitronix 2? Yes, Your Honor, I am, and the sole distinction I have for distinguishing it from Zitronix 2 is that even though it's a Walker process claim just like Zitronix 2, the patent in Zitronix 2 was still alive, whereas here the patent is dead, and the patent is dead because the Federal Circuit has done the exact job this court wants the Federal Circuit to do, which is to analyze the patent issues involved and provide an answer under its law. Does that make this case turn entirely on the Clayton Act? Yes, Clayton Act and Fifth Circuit law on the Clayton Act. Yes, all antitrust issues would be, and then there's an initial first impression for you that we'd have to argue. You're talking about the single enterprise? Yes. And let's say hypothetically, I'm not saying we'd do this, that we decided we can accept the transfer here, it's plausible, and we're going to make everything turn on the single enterprise theory. We're going to make our entire decision turn on that. Are you saying there's no patent hook with that issue if we did that? We don't have to get into any patent issues? There would be, under that hypothetical, there would be no patent hook. And just like you could ask the same question with the statute of limitations. It's just antitrust. It's just an issue of whether you want to follow the Tenth Circuit and maybe the Ninth, or you want to not, and then you have to decide on applicability. But, I mean, those are all issues that are grounded in what's going to end up being Fifth Circuit law. Do you think if I walked down the hall to Judge Higginson, I'm not saying I would do this, and say, hey, Judge Higginson, I just read your brilliant opinion in Dictronics II. Does that opinion mean every Walker process claim from here on out has to be transferred to the federal circuit when it's on appeal? What do you think he'd say? I think Judge Higginson, there's a high probability Judge Higginson says yes. And here's the reason I think you can read his opinion that way, is in the very opening of his analysis, when he starts, the rule he writes, if you apply it as written without going into the procedural posture, what he says effectively is every Walker process claim belongs in the federal circuit. And so if you read it literally, what he's saying is if the complaint is pled such that it's a Walker process claim, I don't care what else is going on, that's going back to you, federal circuit. The reason we're making this distinction is after Gunn v. Minton, if everybody agrees that there's some shift, you don't have to agree on the shift, because I think the federal circuit and the Fifth Circuit don't agree on what that change is, but if there is any impact to that, whether you limit it to malpractice cases, state court cases, I don't know what the different lines are that are being drawn internally, but if you're going to do that, the thing that where the lines cross for Judge Higginson is, he's saying if it's in that form, you're going to go. The fight back is if the patent is dead and they've already done their job, in other words, the job they're supposed to do. So you look at Noble Pharma, for instance, where they even say if it's a patent law issue, I'll apply my law. But if it's an antitrust issue, I'll apply the regional court's law. This is an example of a case where you end up with they've already done their job. They just did it different in time instead of all in one case. So now it's a situation where they've done their job, and the question for you is, under your Zitronix 2, do you want them to apply your law to the rest of the issues and foist it on them, or are you saying, okay, if you've really done your job, I agree. I'll take the case and I'll apply Fifth Circuit law to the other issues rather than having you apply Fifth Circuit law to the other issues, you being fed the Federal Circuit. But Judge Higginson does have a statement in there that would be broad enough for him to say to you as you walk down the hall and talk to him, hey, when I said that, I meant it. It's a form issue for me. When they made the Federal Circuit, what they said was all patent issues go there. Walker process by its very nature implicates patent law, and I don't care that a patent is dead. If you pled it as a Walker process claim, it's going over there. If that's what Zitronix 2 means, if that's the best way of reading the opinion, aren't we bound to send this back to the Federal Circuit? If that's what Zitronix, it's not the best way to read the opinion, Your Honor. If you read the rest of the opinion where I go through those cases, the distinction that I'm making here, whether the patent is live or dead, including the MDS discussion at the very end where Judge Higginson seems to agree that that case should have stayed in the Eleventh Circuit because the patent is expired, I would suggest that that is not the best read. But if that were the read this Court adopted, it would have to go back to the Federal Circuit or it would have to go up because I don't know of a way to reconcile it. If that's the case, only the Supreme Court can referee this. I think so, Your Honor, because I don't think they're going to agree. I mean, they've made it clear they're not going to agree with that. It would be appellate judge malpractice, in my opinion, to read this transfer order and think that they are thinking, the Federal Circuit folks are thinking, yeah, if they send it back here, maybe we'll just fudge it a little bit. They're telling us here it's not plausible to send it back. And so that's—but I think that's the answer to that question. Unless there are other questions or questions on the merits, I don't have anything else really. Thank you, counsel. Thank you, Your Honor. Roboto. What do you think about certifying this ping-pong match to the U.S. Supreme Court? Can we do that? I confess I have not researched that, Your Honor. Me neither. But it will work just as well to send it back to the Federal Circuit because at oral argument, that's exactly what Judge Wallach said you were going to do. And I'll just note that in the Citronix II opinion at page 441, the prior panel was taking off the factors that would have to be decided in that case, and they focused on the fraud because that implicated the Patent Office. We don't have the same issues in this case, but we still have Patent Office issues. How the experimental use—it's complicated. Were there hypotheses? Were there notes taken? Were there confidentiality agreements? Were they treated as experiments? But you agree we don't have a live patent in this case? Absolutely correct, Your Honor. And one quote from Citronix II is, moreover, the fraud element of Citronix's claim can be adjudicated only with reference to patent law. The statute of limitations issues in this case can be adjudicated only with reference to very complicated patent law regarding the experimental use exception and inequitable conduct and what provides notice to us in both of those and due diligence. So they're not the same patent law issues, but they're there just the same. It's not only patent law issues, but essentially, as regards to statute of limitations, it's just who knew what when. But wasn't that it? Really, it's much more than that. I disagree that we only cited Fifth Circuit case law in the briefing on the statute of limitations issue because we have to cite the Federal Circuit law about what inequitable conduct means and what is required for me to have notice of deceptive intent. Is it enough? The Fifth Circuit case law is clear that just because somebody else filed a complaint, it could be frivolous. The complaint by itself, by energy heating, is not enough. But to understand what we were looking at and that we saw an experimental program initially, that has to be Federal Circuit law that you're looking at. There's no other way to do it. And I also brought up a higher-level issue about policing this kind of fraudulent patent conduct. Heat on the Fly, as a judgment-proof LLC owned by another LLC owned by another LLC, which is Phoenix Services LLC, they have a patent infringement weapon of mass destruction that they have used on this industry. And I asked Judge Shen why the Federal Circuit, as a matter of substantive patent law, why they wouldn't want to police that or decide how involved does Phoenix Services have to be to be liable for fraudulent patent litigation assertion. To me, that is a very substantial issue of Federal patent law. And in the record, I can tell you that Phoenix paid for it. This is the filing of the objectively and subjectively baseless patent lawsuit. Phoenix paid for the attorney's fees. They authorized it. And if you go look at footnote four in their public brief, Phoenix Services knew from the beginning there were problems with this patent. And what they were called known issues, and those known issues are also determined as a matter of Federal patent law because those are known issues. They negotiated a $4 million discount when they acquired Heat on the Fly and the other LLCs. For what? For known issues everybody knew was coming with the 993 patent. And what are those known issues? Inequitable conduct. How to apply the exceptional case. Their brief says, oh, they were just talking about obviousness. Well, that's another substantial Federal circuit law. And in closing, I can just read the final. This is on page 443. All right, Counselor, your time has expired, so just wrap up. Yes, Your Honor. The statement that you have to wrestle with for purposes of whether you are bound, the global statement is the right to relief, and this is on page 443 of Zitronix II, the right to relief necessarily depends on resolution of a substantial question of Federal patent law and that patent law is a necessary element of one of the well pleaded claims. Patent law is a necessary element of Walker process claims. Because this case presents a standalone Walker process claim, there are no patent theories in the case that would divert it to our court. That was true in Zitronix. I respectfully submit it's still true here, even though the patent has already been found unenforceable to the inequitable conduct. Thank you, Counselor. We'll take this matter under advisement. We're going to take a very brief five-minute recess at this time.